**UNITED STATES of America**

v.

**Kenroy LAING, a/k/a Junior Roy Laing, Appellant.**

**UNITED STATES of America**

v.

**Garfield Dean MARTIN, Appellant.**

**Nos. 88–3149, 88–3150.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 22, 1989.

Decided Nov. 14, 1989.

Thomas Carroll (appointed by this court as co-counsel), with whom Loren Kieve, Washington, D.C. (appointed by this court) was on the brief, for appellant Laing.

Daniel Ellenbogen, Kensington, Md. (appointed by this court) for appellant Martin.

Christine Desan Husson, Atty., U.S. Dept. of Justice, with whom Jay B. Stephens, U.S. Atty., Washington, D.C., was on the brief, for appellee. John R. Fisher, Asst. U.S. Atty., Washington, D.C., also entered an appearance for appellee.

Before WALD, Chief Judge, and BUCKLEY and SENTELLE, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Kenroy Laing and Garfield Dean Martin appeal their convictions for various firearm and drug offenses in violation of federal and District of Columbia statutes. Laing argues that cocaine seized from his person during an investigatory stop was improperly admitted into evidence and that the district court erred in refusing to give an accomplice jury instruction regarding the testimony of witness Jerome Brown. Martin joins Laing's argument concerning the court's failure to give an accomplice instruction and also argues that his conviction for carrying a firearm in relation to a drug trafficking crime must be vacated as a matter of law because he was acquitted of the predicate drug offense. We reject these and other arguments and affirm the convictions.

## I. BACKGROUND

The following facts were established at the pretrial suppression hearing and at trial. At approximately 12:30 a.m. on February 26, 1988, a District of Columbia Police Department Emergency Response Team went to 865 Chesapeake Street, S.E. to execute a search of apartment 202 pursuant to a valid warrant. From information supporting the search warrant, the police believed the occupants were selling cocaine from the apartment and were armed with automatic weapons. They recognized the apartment's neighborhood as a high-crime area. The officers comprising the Emergency Response Team wore military-style clothing, helmets, and bulletproof vests and were heavily armed.

Upon arriving at the scene in a clearly marked police van, the team members jumped from the van and ran toward the apartment building shouting that they were police officers. As the team approached the building, two officers charged with securing the area around apartment 202 saw Laing standing in the glassed-in lobby of the building. When Laing saw the police, he appeared startled, shoved his right hand into the front of his pants, turned, and began running toward apartment 202. Fearing that Laing was armed because he had kept his hand in his pants, the officers ordered Laing to halt, but he did not comply. When Laing reached apartment 202, he attempted to enter but was unable to do so.

Upon reaching Laing, the officers ordered him to lie down on the floor. When he refused, the officers forced him to the floor and ordered him to remove his hand from his pants. Laing refused to remove his hand, increasing the officers' fear that he had a gun. The officers then forced Laing's hand from his pants and ordered him to "stretch out as far as possible so he couldn't cause us or his self [sic] any harm." Testimony of Officer Charles Porter, Trial Tr. at 31 (July 11, 1988). When Laing stretched out to comply, his pant legs rose up, revealing a bulge in his socks caused by ninety small, clear plastic bags

containing a total of forty-five grams of white rock cocaine, some of which were in plain view. Laing moved to suppress this evidence on the grounds that it was obtained pursuant to an invalid arrest. The district court denied the motion.

As the other officers entered the apartment, they heard a loud clang from the kitchen. Upon reaching the kitchen, they found a loaded semiautomatic machine gun on the floor, but no persons. The officers also found a .38 caliber revolver with ammunition under a pile of dirty clothes in a walk-through closet. Martin emerged from a bathroom through a locked door into the closet and was frisked, but the police found no drugs or weapons on his person. The police also found sixteen bags containing nine grams of cocaine, packaged in the same manner as the cocaine found on Laing, on a table in the living room around which were seated several other individuals. Among those in the apartment were the lessee, Theresa Foreman, and her fourteen-year-old son, Jerome Brown.

Laing and Martin were both charged with the possession of fifty or more grams of cocaine (the forty-five grams found on Laing's person plus the nine found in the apartment) with intent to distribute, in violation of 21 U.S.C. § 841(a) (1982); with using or carrying a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1) (Supp. V 1987); and with possession of an unregistered firearm and ammunition, in violation of 6 D.C.Code §§ 2311 and 2361. In addition, Laing was charged with possessing a machine gun, in violation of 22 D.C.Code § 3214(a). Foreman pled guilty to a charge of making her apartment available to store and distribute cocaine in violation of 21 U.S.C. § 856 (Supp. V 1987). Although Brown occasionally received money in exchange for serving as a lookout in front of the apartment, no charge was brought against him.

At the trial, Foreman and Brown testified that both Laing and Martin had been in the apartment selling drugs during the day prior to their arrest. They testified that Laing had been in the apartment carrying the machine gun that day and that he had stepped out of the apartment shortly before the police arrived. Brown testified that Martin had carried the handgun.

Following the trial, the jury found Laing guilty of the firearm and drug counts; but although it found Martin guilty of using or carrying a firearm in the course of a drug trafficking offense, it acquitted him of the charge of possession of cocaine with intent to distribute.

## II.  Discussion

Between them, Laing and Martin advance five reasons why their convictions should be set aside. Laing claims that the cocaine found on his person outside apartment 202 was seized illegally and should not have been admitted into evidence. He also asserts that there was insufficient evidence to link him to the weapons and cocaine found in the apartment. Both Laing and Martin argue that the district court improperly refused to give an accomplice instruction concerning the testimony of Jerome Brown. Martin contends that his acquittal on the drug trafficking charge indicates that the evidence supporting his conviction on the charge of carrying a firearm in relation to a drug trafficking crime is insufficient as a matter of law, and he maintains that the district court's response to a mid-deliberation question from the jury was inaccurate, misleading, and inappropriate. We discuss these arguments in sequence.

### A.  The Cocaine Found on Laing's Person

Laing contends that his detainment was not merely an investigative stop but an arrest without probable cause because the officers had no reason, on first seeing him, to suspect him of any wrong-doing; that it was reasonable for him to flee at the sight of heavily armed members of the Emergency Response Team rushing in his direction; and that the use of excess force by the officers converted what might have been a valid investigative stop into an arrest. As he was thus arrested without probable cause, Laing argues, the evidence seized from his person during the illegal arrest

should have been suppressed. We hold, however, that the actions of the officers stopping Laing were based on a suspicion—reasonable in view of all of the surrounding circumstances—that Laing was armed.

■ The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons … against unreasonable … seizures." U.S. Const. amend. IV. Law officers may arrest a person without a warrant only if they have probable cause to believe that he has committed a crime. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225–26, 13 L.Ed.2d 142 (1964). Law officers may also temporarily detain a person for questioning or investigation if they have a reasonable suspicion, supported by "specific and articulable facts" and "rational inferences from those facts," that the person is engaged in criminal activity. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). Although an investigative stop is not an arrest, it may become one if the duration of the stop or the amount of force used is "unreasonable" under the circumstances. *See United States v. Sharpe,* 470 U.S. 675, 682–88, 105 S.Ct. 1568, 1573–77, 84 L.Ed.2d 605 (1985); *United States v. White,* 648 F.2d 29, 34–35 (D.C.Cir.), *cert. denied,* 454 U.S. 924, 102 S.Ct. 424, 70 L.Ed.2d 233 (1981); *see also United States v. Oshinuga,* 647 F.Supp. 105, 108–09 (N.D.Ill.1986) (eighteen-hour detention reasonable given suspicion that detainee was transporting narcotics internally).

■ During an investigative stop law officers may, under appropriate circumstances, search the detainee to determine whether he is armed. *Terry,* 392 U.S. at 27, 88 S.Ct. at 1883. In *Terry,* the Court provided the following rationale for this rule:

> [W]e cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest. When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.

*Id.* at 24, 88 S.Ct. at 1881. Such a search must be for weapons only and must be "strictly circumscribed by the exigencies which justify its initiation." *Id.* at 25–26, 88 S.Ct. at 1882; *see also Sibron v. New York,* 392 U.S. 40, 62–66, 88 S.Ct. 1889, 1902–04, 20 L.Ed.2d 917 (1968) (Fourth Amendment does not permit search for drugs on the person of suspect detained in investigative stop).

■ A law officer may conduct such a search for weapons if

> he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger…. [I]n determining whether the officer acted reasonably in such circumstances, due weight must be given … to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

*Terry,* 392 U.S. at 27, 88 S.Ct. at 1883 (citations omitted); *see also Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972) ("So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose.") (footnote omitted). The amount of force used to carry out the stop and search must be reasonable, but may include using handcuffs or forcing the detainee to lie down to prevent flight, *United States v. Taylor,* 716 F.2d 701, 708–09 (9th Cir.1983), or drawing guns where law officers reasonably believe they are necessary for their protection. *E.g., United States v. Merritt,* 695 F.2d 1263, 1272–74 (10th Cir.1982), *cert. denied,* 461 U.S. 916,

103 S.Ct. 1898, 77 L.Ed.2d 286 (1983). Factors that may justify an investigative stop, a search for weapons, or the escalated use of force include the time of day, the "high-crime" nature of the area, an informant's tips that persons might be armed, furtive hand movements, flight or attempted flight by the person sought to be detained, and a pressing need for immediate action. *Adams*, 407 U.S. at 147–48, 92 S.Ct. at 1924; *White*, 648 F.2d at 39–40, 43.

■ The officers' treatment of Laing clearly falls within the *Terry* doctrine. Laing's hand movements and flight toward apartment 202, coupled with the time of day and the officers' knowledge of the area and their belief that those in the apartment were heavily armed, make it clear that the officers' actions were motivated by a genuine and well-founded fear that Laing was armed and were reasonable under the circumstances. *See White*, 648 F.2d at 40 ("A 'reasonable reaction' in this context ... turns on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' ") (quoting *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949)). We therefore hold that the district court properly denied Laing's motion to suppress the cocaine found on his person.

## B. The Sufficiency of the Evidence Against Laing

■ Laing also argues that his convictions should be vacated because there was insufficient evidence to link him to either the cocaine or the machine gun found inside the apartment. In reviewing the sufficiency of the evidence supporting a conviction, the court must "view[ ] the evidence in the light most favorable to the Government" and accord it "the benefit of all legitimate inferences ... recognizing that it is the jury's province to determine credibility and to weigh the evidence." *United States v. Singleton*, 702 F.2d 1159, 1163 (D.C.Cir.1983). The court must then determine whether each element of the offenses for which the defendant was convicted is sufficiently supported by the evidence. *See United States v. Carter*, 522 F.2d 666,

683 n. 60 (D.C.Cir.1975). We conclude that there is sufficient evidence to support Laing's convictions for possessing fifty grams or more of cocaine with intent to distribute and carrying the machine gun in relation to a drug trafficking crime.

Laing relies largely on alleged inconsistencies between the testimony of Brown and Foreman concerning the times that he was in the apartment selling drugs and carrying the machine gun. As Foreman and Brown were present in the apartment at different times, however, it is not surprising that their testimony concerning Laing's activities should differ. While their testimony may be inconsistent, it is not necessarily contradictory. Moreover, Laing's conviction is supported by the following evidence: forty-five grams of cocaine were found on Laing's person; nine grams were found inside the apartment; Foreman and Brown testified that they saw Laing on several occasions in the apartment selling cocaine from the living room table while carrying the machine gun and that shortly before the police arrived, Laing stepped outside in a T-shirt (in February); and finally, while attempting to flee from the approaching Emergency Response Team, Laing tried to reenter the apartment. Given the inferences that the jury could permissibly draw from this evidence, Laing's conviction is well supported.

## C. The Accomplice Instruction

During the trial, the district court gave the following accomplice instruction to the jury concerning the testimony of Foreman:

Ladies and gentlemen of the jury, our last two witnesses have been Theresa Foreman and Jerome Brown and I have certain instructions I want to give you with respect to the testimony you have heard from them.

There is some evidence in the case from which you might be able to find Theresa Foreman is an accomplice of these Defendants and others in the commission of the offenses charged. It will be ultimately your determination as to whether or not she is or is not or was or was not an accomplice. But should you

find that she was an accomplice of these Defendants and others in the offenses charged, you are instructed that accomplices in the commission of a crime are competent witnesses and the Government has a right to use them as witnesses.

An accomplice is anyone who knowingly and voluntarily cooperates with, aids, assists and encourages another person in the commission of a crime regardless of his or her degree of participation.

The testimony of an alleged accomplice should be received in caution with scrutiny and care. You should give it such weight in your judgment as it is fairly [sic] entitled to receive. You may convict the Defendant upon the uncorroborated testimony of an alleged accomplice but only if you believe the testimony of the accomplice proves the guilty [sic] of the Defendant beyond a reasonable doubt.

[The court then gave a prior-inconsistent-statement instruction concerning the testimony of Brown.]

Trial Tr. at 91–94 (July 13, 1988). At the close of evidence, the district court repeated this instruction, but prefaced it as follows: *"One of the witnesses who has appeared before you* has been identified as a possible accomplice...." Trial Tr. at 14 (July 19, 1988) (emphasis added).

Laing and Martin requested an accomplice instruction regarding the testimony of Brown, but the district court refused, holding that Brown's participation as a lookout in the drug selling operation was not voluntary and that Brown was therefore not an accomplice. Laing and Martin argue that the district court's refusal to give the requested accomplice instruction affected their substantial rights and entitled them to a new trial.

■ The district court enjoys a large measure of discretion with respect to instructing the jury concerning the credibility of witnesses. *United States v. Lee,* 506 F.2d 111, 123 (D.C.Cir.1974), *cert. denied,* 421 U.S. 1002, 95 S.Ct. 2403, 44 L.Ed.2d 670 (1975). Where the prosecution relies on uncorroborated accomplice testimony, however, "if important elements of the accom-

plice's testimony are uncorroborated by other direct evidence and if circumstantial evidence tending to corroborate the accomplice's testimony is not compelling or supports that testimony only through a chain of inferences that is less than immediate and not altogether clear," it may be reversible error for the court to refuse to give an accomplice instruction when requested by a defendant. *United States v. Bernal,* 814 F.2d 175, 183–84 (5th Cir.1987) (footnote omitted); *accord Lee,* 506 F.2d at 118–19. In such a case, the defendant is entitled to a new trial if the failure to give the accomplice instruction substantially affected the outcome of the trial. *See Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946); *Bernal,* 814 F.2d at 184–85. Where accomplice testimony is materially corroborated, however, "the failure to give a cautionary accomplice instruction is not error—whether requested or not." *Lee,* 506 F.2d at 120.

■ To prevail on this claim, Laing and Martin must show that Brown was an accomplice and that his testimony was not materially corroborated, and that the failure to give an accomplice instruction substantially affected the outcome of the trial. The government's theory of the case was that Brown was more a victim of the cocaine-selling operation than a co-venturer. Although Brown was only fourteen years old at the time of the search and testified at trial that he had wanted the drug dealers to leave the apartment, he was paid on occasion by the drug dealers to stand watch outside the apartment. Regardless of the government's theory of the case, Brown *could* have been indicted for his participation and therefore could have been considered an accomplice. *See United States v. Nolte,* 440 F.2d 1124, 1126 (5th Cir.), *cert. denied,* 404 U.S. 862, 92 S.Ct. 49, 30 L.Ed.2d 106 (1971).

■ Brown's testimony was substantially corroborated by Foreman's testimony, as to which an accomplice instruction was given, in all material respects save one: Foreman did not recall whether Martin carried a gun while selling cocaine in the apartment. Brown's testimony was also corroborated

by such circumstantial evidence as Laing's flight toward and attempted entry into the apartment, the presence of the machine gun in the apartment, the identical nature of the packaging and drugs found on Laing's person and inside the apartment, and the close proximity of the handgun to Martin at the time the search warrant was executed. We conclude that Brown's testimony was sufficiently corroborated so as not to require an accomplice instruction.

But even assuming that the requested instruction should have been given, the court's failure to give it was harmless error. Brown was thoroughly cross-examined by counsel for Laing and Martin. The jurors were aware of Brown's age (fifteen years old at the time of the trial), the fact that he might want to help his mother (who had pled guilty but awaited sentencing), and that he had made prior inconsistent statements. The jurors were also instructed as to how these facts should affect the level of credibility they should attach to Brown's testimony. Moreover, having twice been given an accomplice instruction, the jury knew what an accomplice was, that it had the responsibility to determine whether a given witness was an accomplice, and that an accomplice's testimony should be received with caution. Given all these circumstances, we conclude that the jury could be expected to scrutinize Brown's testimony with the necessary care and that the district court's failure to give an accomplice instruction regarding Brown did not substantially affect the outcome of the trial.

## D. The Inconsistent Verdicts

In Count One of its indictment, the grand jury charged that Martin and Laing had "unlawfully, knowingly, and intentionally possess[ed] with intention to distribute ... 50 grams and more" of cocaine in violation of 21 U.S.C. § 841(a) and other sections of the Code. In Count Three, it charged that Martin,

> during and in relation to a drug trafficking crime for which he may be prosecuted in a court of law, *that is, Count One of this Indictment,* knowingly used

and carried a firearm [in violation of 18 U.S.C. § 924(c)(1) ].

(Emphasis added).

Martin contends that all of the elements of the offense of carrying a firearm in relation to a drug trafficking offense (Count Three) of which he was convicted could not, as a matter of law, have been proved beyond a reasonable doubt because he was acquitted of the underlying drug trafficking offense (Count One). A criminal defendant, however, may not attack his conviction on one count solely because it is inconsistent with the jury's acquittal on another. *United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984); *Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932). This is the rule even where the defendant has been convicted of a compound offense but acquitted of a predicate offense that is an element of the compound offense. *Powell,* 469 U.S. at 67–68, 105 S.Ct. at 478 (defendant convicted of using telephone in facilitation of conspiracy to sell drugs and possession of drugs, but acquitted of the conspiracy and possession charges). Although inconsistent verdicts indicate that the jury did not speak its real conclusions, they do not necessarily indicate that the jury was not convinced of the defendant's guilt. *Id.* at 64–65, 105 S.Ct. at 476–77. It cannot be determined from such inconsistency whether the government or the defendant has reaped a windfall: the jury may have acquitted on the predicate offense as a result of lenity even though it was convinced of the defendant's guilt. *Id.* at 65, 105 S.Ct. at 476–477. Jury verdicts are therefore insulated from review on the grounds of inconsistency, and review is limited to determining whether there is sufficient evidence to support the conviction. *Id.* at 67, 69, 105 S.Ct. at 478, 479.

The Supreme Court's decision in *Powell* forecloses Martin's argument. Martin's contention that 18 U.S.C. § 924(c)(1) requires proof of all of the elements of a drug trafficking crime beyond a reasonable doubt is therefore beside the point. Moreover, Martin acknowledges that section 924(c)(1) would support a conviction in the

absence of a separately charged drug trafficking offense.

■ Martin claims, however, that the reference in Count Three to the violation charged in Count One as the predicate drug trafficking offense takes this case outside the reach of *Powell.* Martin argues that Count One was therefore made an element of Count Three. Like the exception put forth by the defendant in *Powell,* however, this argument "falls almost of its own weight." 469 U.S. at 67, 105 S.Ct. at 478. Martin contends that not all of the elements of Count Three were proven beyond a reasonable doubt because of the acquittal on Count One. *Powell* clearly teaches, however, that we may not infer that the government failed to prove all of the elements of Count Three from the acquittal on Count One.

■ The only relevant question, therefore, is whether Martin's conviction on the section 924(c)(1) offense is supported by sufficient evidence. The handgun was found hidden under dirty laundry near the locked bathroom from which Martin emerged during the search. Testimony by Foreman and Brown indicated that Martin took part in the drug-selling operation and regularly carried the handgun while doing so. Even though no drugs or weapons were actually found on Martin's person after he emerged from the bathroom in the apartment, the evidence, if believed, establishes a sufficient link between Martin, the handgun, and the drugs to support his conviction on Count Three.

## E. The Answer to the Jury's Query

At the close of evidence, the district court instructed the jury concerning the charge of carrying a firearm in relation to a drug trafficking crime as follows:

> Before you may consider count 2 of the indictment, you must first be convinced beyond a reasonable doubt that either or all of the defendants are guilty of the drug trafficking crime charged in count 1, i.e., possession with intent to distribute 50 grams and more of a mixture or substance of cocaine base or of the lesser included offense of possession

with intent to distribute a controlled substance of 5 grams or more.

> In the event you have found a defendant or defendants not guilty of the drug trafficking crimes, then you must find that the defendant or defendants are not guilty of crimes charged in count 2 of the indictment or count 3 of the indictment; namely, using or carrying a firearm during the commission of the drug trafficking crime, and you would then pass on to the remaining counts.

Trial Tr. at 31–32 (July 19, 1988). After a few hours of deliberations, the jury sent back the following note:

> On Count three of Garfield Dean Martin, we as the jury would like to have more clarification of Charge Three. We are not certain what "that is, Count one of this indictment is pertaining to Count three."

Record Item 36 at 2. Counsel for Martin asked the district court to reinstruct the jury that it had to find every element of the section 841(a) offense to convict on the section 924(c)(1) offense. The government, however, argued that the district court should limit its reply to the specific question asked by the jury. The court gave the following answer to the jury's question:

> If I understand [your] question correctly, I am going to try to answer it, and I will ask you madam forelady to simply give me a yes or no answer in response to my answer to your question as to whether or not that answers your question. If it doesn't, then we will proceed from that point.

> Count 3 of the indictment charges that on or about February 26, 1988 within the District of Columbia Garfield Dean Martin during and in relation to the drug trafficking crime for which he may be prosecuted in the court of the United States, that is, count 1 of this indictment, knowingly used and carried a firearm, that is a Smith and Wesson model 36, 38 caliber special. The phrase "that is count 1 of this indictment" refers to the drug trafficking charge charged in count 1 of the indictment; namely, possession

with intent to distribute cocaine base. Does that answer your question?

Trial Tr. at 67–68 (July 19, 1988). In response, the forelady nodded "yes." The jury then resumed its deliberations and emerged with its verdicts about thirty minutes later.

Martin claims that the district court's response to the jury's query was inaccurate, misleading, and inappropriate. The court's response was limited to answering the jury's query and was entirely accurate. Martin's complaint is that the district court should have reminded the jury that it could not convict Martin unless all elements of Count Three, which included a reference to those of Count One, were proven beyond a reasonable doubt. Martin concedes that the original charge to the jury was proper.

A trial court has considerable discretion in determining how to respond, if at all, to a jury's request for clarification of a jury instruction. *United States v. Wharton*, 433 F.2d 451, 454 n. 9 (D.C.Cir.1970); 2 C. Wright, *Federal Practice and Procedure* § 502, at 827 (1982). Where the jury explicitly reveals its confusion on an issue, however, the court should reinstruct the jury to clear away the confusion. *Bollenbach v. United States*, 326 U.S. 607, 612–13, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946); *United States v. Bolden*, 514 F.2d 1301, 1309 (D.C.Cir.1975). A court may go beyond the limits of the jury's request for clarification to avoid giving a misleading or one-sided answer. 2 C. Wright, *supra* § 502, at 829–30. A court's determination to limit its response to answering the jury's question, however, should be reversed only if it is an abuse of discretion. *See Wharton*, 433 F.2d at 454 n. 9. Moreover, the court must consider the propriety of the supplemental instruction in light of the other instructions previously given. *Vauss v. United States*, 370 F.2d 250, 252 (D.C.Cir.

1966). Unlike the cases relied on by Martin, which involved incorrect initial or supplemental instructions, *see, e.g., United States v. Rhone*, 864 F.2d 832, 834–35 (D.C. Cir.1989) (error in original charge); *United States v. Lasuita*, 752 F.2d 249, 251–54 (6th Cir.1985) (incorrect supplemental instruction), the initial and supplemental instructions in this case were clearly correct. We therefore hold that the district court's failure to repeat its earlier instructions was not an abuse of discretion.

## III. CONCLUSION

As Laing's detention by the Emergency Response Team officers was within the confines of *Terry*, the trial court's admission into evidence of the cocaine seized from his person was proper. Even if we were to conclude (which we do not) that the court's refusal to give a specific accomplice instruction regarding Brown's testimony was error, it was clearly harmless. Martin's claim that his acquittal on the drug trafficking offense charged in Count One of the indictment demonstrates that the evidence was insufficient to support his conviction on Count Three is foreclosed by recent Supreme Court precedent. The court did not abuse its discretion in refusing to reinstruct the jury that it had to find all of the elements of Count One beyond a reasonable doubt in order to convict on Count Three. Finally, the evidence was sufficient to support the convictions of Laing and Martin. Their convictions are therefore

*Affirmed.*