[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO SUPPRESS
The defendant, Marcus Gregory, has moved to suppress items obtained from him during the early morning hours of January 10, 1997 on the basis that such items are the fruit of an illegal arrest, which motion is filed pursuant to C.G.S. § 54-33f. The state bears the burden of proving by a preponderance of the evidence that the search in question falls within one of the recognized exceptions to the warrant requirement for a search and seizure. CT Page 13294
The court held an evidentiary hearing regarding the motion to suppress on December 2 and December 3, 1997. At the hearing, the court finds that the state has proven the following facts.
At approximately 1:53 a.m. on January 10, 1997, Troopers Gregory and Wooldridge observe a red Subaru traveling southbound on Route 25 in Bridgeport, without headlights. Trooper Wooldridge pursued that vehicle which did not stop but rather increased its speed in response to Wooldridge activating his lights and siren. Wooldridge radioed Gregory advising him of these circumstances.
The Subaru then got off Route 25 at exit one but in doing so cut across a grass area at that exit. Wooldridge followed and was able to maintain eye contact with the Subaru to a point near Park Avenue and Hanover Street where the operator jumped from the moving vehicle, ran north on Park Avenue and into a condominium area on Park Avenue while the Subaru continued down Hanover Street where it eventually struck a parked vehicle.
Wooldridge did not get a good look at the operator of the Subaru but described him to the dispatcher as a black male wearing gray pants, black jacket, black sneakers and short hair. Wooldridge continued to search while still in his cruiser and when he arrived at Hanover Street he observed the position of the red Subaru and also observed a head pop out from an alley adjacent to 91 Hanover Street, look in his direction and then pop back in.
At about this time Trooper Gregory arrived at the scene and they both walked into the alley adjacent to 91 Hanover Street, searched the rear yard with flashlights and, finding nothing, returned to the front of 91 Hanover Street. At this point, Officer Lanzante of the Bridgeport Police Department arrived and all three of them again entered the same alley. At this time, Officer Lanzante observed the defendant standing in a small area between a couch and the building against which it was leaning and appeared to be hiding. Both Lanzante and Wooldridge drew their weapons and Wooldridge ordered the defendant to lie on the ground. When he didn't comply after two requests, Trooper Gregory forced him to the ground and cuffed him behind his back. The defendant was then taken from the alley to an area near Lanzante's cruiser where the lighting was better.
Prior to any search of the defendant, he was asked for identification which he could not provide and was also asked why CT Page 13295 he was in the alley. The defendant stated that he had been smoking marijuana and was hiding so that he would not get caught.
Trooper Wooldridge then conducted a pat-down for weapons and felt a plastic bag in the defendant's pants. Based upon his training and experience and the defendant's statement regarding smoking marijuana, he believed that the plastic bag contained marijuana.
Wooldridge seized the plastic bag which contained a substance which tested positive for marijuana. The defendant was placed under arrest for possession of marijuana and a search incident to that arrest revealed a Derby High School ring, cash, including $300 in $20 bills in his rear pocket, a beeper and a cable wire. The ring, beeper and cable wire were later determined to belong to one of the complainants.
At the point when the defendant was placed under arrest on the marijuana charge, Trooper Wooldridge expressed doubt as to whether the person in custody was the same person who had bailed out of the Subaru at one point telling his dispatcher, "This male that we have, I don't think it is . . . the same male. . . ." Wooldridge's doubts stemmed from the fact that the defendant had long hair and the clothing description did not exactly match. Trooper Wooldridge nevertheless, based upon his suspicion that the defendant may be the same person that he had been chasing, called Officer Novia, a K-9 officer whose dog "Timmy" tracked the operator of the Subaru to the area of the couch where the defendant was located.
The area where the above events transpired is a high crime area, and throughout the course of those events no other person was observed by Troopers Gregory and Wooldridge.
After the custodial search, all seized items except marijuana were returned to the defendant, with the ring being placed in his right front pocket. The defendant was then placed in the back seat of Lanzante's cruiser.
Troopers Gregory and Wooldridge were then advised by a sergeant on the radio that the Subaru was to be treated as a crime scene due to the reported burglary and sexual assault in Ansonia. As information was received, the troopers sought to obtain possession of the Derby class ring. The defendant was again searched and a ring was found, not on his person but under CT Page 13296 the cushion of the rear seat of Lanzante's cruiser. The defendant was subsequently turned over to Ansonia along with the items that were seized from his person.
It is the claim of the defendant that there was no probable cause to arrest the defendant on January 10, 1997 and that any permissible search sanctioned by Terry v. Ohio was exceeded by the extent and the intrusiveness of the police behavior in their continued detention of the defendant. Therefore, the defendant claims that all evidence seized from the person of the defendant and any derivative evidence seized as a result of that search must be suppressed.
For the following reasons, it is the opinion of the court that the items sought to be suppressed were not the result of an illegal search and the defendant's motion should be denied.
While the state argues that there existed probable cause to arrest the defendant for Evading Responsibility and Engaging Police in Pursuit, the court does not agree. The facts and circumstances presented to Troopers Gregory and Wooldridge at the time that they detained the defendant after locating him in the alley were not such to raise to the level of probable cause to arrest him for those charges at that time. Indeed, Trooper Wooldridge, the one person who had seen the person who had fled from the Subaru had doubts as to whether the defendant was that person.
However, it is the opinion of the court that Trooper Wooldridge, under the circumstances, had a reasonable and articulable suspicion that the person found hiding behind the couch in a dark alley may have been engaged in criminal activity.Terry v. Ohio, 392 U.S. 21 (1968). Additionally, Trooper Wooldridge had a reason to believe that the defendant may be armed and dangerous. Terry v. Ohio, supra at p. 24.
Trooper Wooldridge had been engaged in pursuit of a vehicle driven by someone who obviously did not want to be apprehended. He observed that person flee from the Subaru and run behind certain buildings in close proximity to where the defendant was located. The area was a high crime area, it was in the early morning hours and no one other than the defendant was observed in that area. Shortly after the operator of the Subaru fled, Trooper Wooldridge observed someone poke his head from the alley adjacent to 91 Hanover Street, and then return to that alley. The CT Page 13297 defendant, when discovered, was obviously hiding, giving rise to a reasonable suspicion that he did not wish to be discovered. In the court's view, these factors justified the detention of the defendant under the rationale of Terry to determine if he was engaged or about to engage in criminal activity, including the determination as to whether there was probable cause to believe that he was the operator of the red Subaru. The fact that there was a discrepancy in the physical description between the defendant and the operator of the Subaru certainly bears upon the issue of probable cause to arrest him for those motor vehicle charges but does not negate the reasonable and articulable suspicion necessary for a Terry stop.
Also, the above circumstances gave Trooper Wooldridge reason to believe that the defendant may be armed and dangers, thus permitting a pat-down for weapons for the safety of the officers. The court disagrees with the defendant's claim that the extent of the detention and search exceeded that sanctioned byTerry. "The amount of force used to carry out the stop and search must be reasonable, but may include using handcuffs or forcing the detainee to lie down to prevent flight . . . or drawing guns where law officers reasonably believe they are necessary for their protection. . . . Factors that may justify an investigative stop, a search for weapons, or the escalated use of force include the time of day, the `high crime' nature of the area, an informant's tips that persons might be armed, furtive hand movements, flight or attempted flight by the person sought to be detained, and a pressing need for immediate action."U.S. v. Laing, 889 F.2d 281, 285-286 (D.C. Cir. 1989).
The factors present in the case at hand justified the conduct of the police officers with respect to the extent of the detention of the defendant.
Furthermore, if a police officer during a pat-down for weapons pursuant to a lawful Terry stop, determines that a subject is in possession of non-threatening contraband, that officer has the right to seize such contraband. Statev. Trine, 236 Conn. 216 (1996). Trooper Wooldridge testified that he believes that the defendant was in possession of marijuana due to what he felt was a plastic bag in his pocket which he recognized as a common method of packaging marijuana along with the defendant's statement that he was hiding because he had been smoking marijuana and did not want to get caught. CT Page 13298
The defendant maintains that the seizure of the plastic baggie containing marijuana was illegal as it was based in part on the defendant's statement, noted above, which was in response to an officer's question as to why he was in the alley, specifically, "What are you doing out herein"
However, certain investigatory techniques may be utilized during the course of a Terry stop including interrogation which may include a request for identification and inquiry as to the suspicious conduct of the person detained. SeeUnited States v. Smith, 574 F.2d 882 (6th Cir. 1978). Also, the definition of interrogation extends only to words or actions on the part of police officers that they should have known were likely to elicit an incriminating response.Rhode Island v. Innes, 446 U.S. 291, 100 S.Ct. 1692,64 L.Ed. 297 (1980).
Thus, the limited inquiry of the defendant as to why he was in the alley does not render his responses thereto violative of his Fifth Amendment rights thereby tainting his subsequent arrest.
It is therefore the opinion of the court that the items seized from the defendant in the early morning hours of January 10, 1997 were seized pursuant to a lawful search pursuant to his legal arrest for possession of marijuana. The motion to suppress is therefore denied.
Thompson, J.