JOURNAL ENTRY AND OPINION
Defendant-appellant Jacqueline Pickett appeals from her conviction following a no contest plea for possession of crack cocaine (R.C. 2925.11). Defendant contends that the trial court erred in not suppressing the plastic package of cocaine that defendant spit out in the back of a police cruiser on the grounds that the officers had stopped and detained defendant in violation of her constitutional rights. We find no error and affirm.
On July 16, 1998, Det. Franklin Lake of the Cleveland Police Department was on routine patrol when he received a tip from a city inspector who worked for the Drug House Task Force. The informant told Det. Lake that a heavy set, black female with a light mustache, wearing a white t-shirt was making hand-to-hand exchanges indicative of drug transactions in the area of East 46th Street and Central Avenue. Part of the informant's job was to obtain information concerning drug activity on street corners and, based on a year's experience with the informant, Det. Lake considered his tips to be reliable.
Det. Lake and his partner proceeded to the area of East 46th and Central Avenue in an unmarked police vehicle. This was a high drug area familiar to Det. Lake who had previously made numerous arrests in that area for heroin and cocaine. Upon arrival, Det. Lake and his partner observed defendant, who fit the informant's description, huddled together with another female. As Det. Lake and his partner pulled up, someone yelled vice and defendant separated from the other woman. Det. Lake pulled to the curb and yelled over to the two females requesting that they come back to his vehicle. The two women immediately came back and Det. Lake noticed that defendant had a light mustache, matching the description obtained from the earlier tip.
While seated in his vehicle, Det. Lake asked defendant for her name. She told him that her name was J.P. As Det. Lake began to exit his vehicle, defendant fled. Det. Lake got out of his car, yelled police, and ran after her. After chasing her for ten feet, Det. Lake saw defendant place her left hand up underneath her shirt and move it towards her mouth. Based on his eight years of police experience making hundreds of drug arrests, Det. Lake believed that defendant was attempting to conceal an illegal substance.
According to Det. Lake, the entire chase lasted no more than ten seconds. He caught up to defendant and for safety reasons handcuffed her, Mirandized her and placed her in the back of his police car. Det. Lake claims he did not put her under arrest at that time, but did detain her for questioning. After being seated in the rear of the police car, defendant was choking and chewing something and eventually spit out a clear plastic bag. Another detective in the car recovered the plastic bag and noticed that it contained suspected crack cocaine. Defendant was subsequently booked at the Justice Center where she complained that her chest was hurting her. She was brought to St. Vincent Charity Hospital and kept under observation. At the hospital, it was found that defendant had PCP, marijuana and cocaine in her system. A subsequent test of the contents of the small plastic bag revealed that it contained 13.36 grams of crack cocaine with which defendant was charged with illegal possession.
Defendant testified at the suppression hearing that she was not selling drugs to anyone on the day in question, but admitted that she did, in fact, possess the crack cocaine that was recovered by the police. She also stated that she initially ran from Det. Lake because she did not want to answer his questions. Defendant further admitted that she had been getting high earlier that day and had three prior convictions, one of which was for possession of drugs.
Defendant was indicted on October 22, 1998 for possession of crack cocaine in an amount greater than ten grams but not exceeding twenty-five grams. She pled not guilty on November 5, 1998. On December 14, 1998, defendant filed a motion to suppress the package of cocaine and for the return of illegally seized property. Following a hearing, the trial court denied defendant's motion to suppress and adopted the findings of fact and conclusions of law submitted by the State. Defendant withdrew her not guilty plea and entered a plea of no contest, reserving her right to appeal the denial of her suppression motion. This timely appeal ensued.
We will address defendant's assignments of error in the order asserted and together where it is appropriate for discussion.
 I. THE COURT ERRED WHEN IT DENIED THE APPELLANT'S MOTION TO SUPPRESS AND FOR THE RETURN OF ILLEGALLY SEIZED EVIDENCE.
Defendant argues that the trial court improperly denied her motion to suppress because the police officers had no probable cause to stop or apprehend her because she was not engaged in any suspicious activities. We find no merit to these arguments. What started out as a consensual inquiry by the officers in following up an informant's tip, quickly escalated into a lawful investigative stop as events unfolded.
The scope of our review on a motion to suppress was set forth by this Court in State v. Curry (1994), 95 Ohio App.3d 93, 96:
 In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. State v. Clay(1973), 34 Ohio St.2d 250, 63 O.O.2d 391, 298 N.E.2d 137. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. See State v. Schiebel (1990), 55 Ohio St.3d 71, 564 N.E.2d 54. However, without deference to the trial court's conclusion, it must be determined independentlywhether, as a matter of law, the facts meet the appropriate legal standard.
 State v. Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908.
The Fourth and Fourteenth Amendments to the United States Constitution as well as Section 14, Article I of the Ohio Constitution prohibit any governmental search and seizure, including a brief investigatory stop, unless supported by objective justification. Terry v. Ohio (1968), 392 U.S. 1,19; State v. Andrews(1991), 57 Ohio St.3d 86, 87. In order to justify a brief investigatory stop or detention pursuant to Terry, the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. State v. Williams (1990), 51 Ohio St.3d 58,60, quoting Terry, supra, at 21. Whether an investigatory stop is reasonable in a given situation depends upon the totality of the circumstances surrounding the incident. Id.; State v. Bobo (1988), 37 Ohio St.3d 177, 178. The propriety of an investigatory stop must be assessed in light of the totality of the surrounding circumstances as viewed through the eyes of a reasonable police officer who must confront those circumstances on the scene. State v. Andrews (1991), 57 Ohio St.3d 86, 87-88; City of Richmond Heights v. Dinunzio (Jan. 6, 2000), Cuyahoga App. No. 75409, unreported.
 In addition to the arresting officer's training and experience, other facts that may be considered by a Court in determining whether the officer's suspicion of criminal behavior was reasonable include: the arresting officer's familiarity with how drug transactions occur, State v. Bobo (1988), 37 Ohio St.3d 177, 524 N.E.2d 489; the reputation of the area for criminal activity, U.S. v. Magda (C.A.2, 1976), 547 F.2d 756, cert. denied (1977), 434 U.S. 878, 98 S.Ct. 230, 54 L.Ed.2d 157; the time of day on which the alleged activity took place, State v. Andrews (1991), 57 Ohio St.3d 86, 88, 565 N.E.2d 1271; and furtive gestures. State v. Bobo, supra.
State v. Mills (Aug. 28, 1998), Montgomery App. No. 16898, unreported.
In the instant case, defendant asserts that the fact that she was handcuffed, given her Miranda rights and placed in the police cruiser converted the initial investigative detention into an arrest. Defendant asserts that there was no basis for an investigative stop nor probable cause to justify the arrest. The State, on the other hand, asserts that Det. Lake's means of detaining defendant only amounted to a justifiable investigatory stop and did not constitute an arrest.
In Ohio, an arrest is characterized by the following elements:
 (1) An intent to arrest, (2) under real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested.
State v. Darrah (1980), 64 Ohio St.2d 22, 26; State v. Barker (1978), 53 Ohio St.2d 135, paragraph one of the syllabus. Furthermore, an arrest signifies the apprehension of an individual or the restraint of a person's freedom in contemplation of the formal charging with a crime. Darrah, supra.
Det. Lake's initial encounter with defendant was consensual. Since defendant precisely fit the description of the person described in the city inspector's tip, Det. Lake and his partner were merely trying to ask her some questions to further their investigation. Defendant was in no way forced to comply with Det. Lake's initial inquiry. After Det. Lake asked her to come over to his car, she voluntarily walked up to the vehicle and began to respond to his questions. Since consensual encounters between the police and citizens are constitutional, defendant'sFourth Amendments rights were not implicated by Det. Lake's initial actions.
However, as the officer began to leave the car, defendant immediately fled after initially responding to one of Det. Lake's questions. Det. Lake had already identified defendant as one engaged in drug activity as advised by the informant's tip. This was all taking place in a high drug area known to Det. Lake. The officer was confronted with a fleeing suspect who looked as if she was attempting to swallow evidence. The combination of all of these factors led Det. Lake to reasonably suspect that defendant was engaged in criminal drug activity. Defendant argues (Aplt's Brf. at 21) that the precise issue as to whether a person's sudden flight from the police, even in an area where there is a high incidence of drug activity, can serve as a basis for an investigative stop, is governed by Illinois v. Wardlow (2000), ___ U.S. ___, 120 S.Ct. 673. However, in this recent decision, the Supreme Court held that flight may be enough to warrant an investigative stop and stated as follows:
 Nolan and Harvey were among eight officers in a four car caravan that was converging on an area known for heavy narcotics trafficking, and the officers anticipated encountering a large number of people in the area, including drug customers and individuals serving as lookouts. App. 8. It was in this context that Officer Nolan decided to investigate Wardlow after observing him flee. An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime. Brownv. Texas 443 U.S. 47, 61 L.Ed.2d 357, 99 S.Ct. 2637 (1979). But officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation.
 Accordingly, we have previously noted the fact that the stop occurred in a high crime area among the relevant contextual considerations in a Terry analysis. Adams v. Williams, 407 U.S. 143, 144, 32 L.Ed.2d 612, 92 S.Ct. 1921
and 147-148 (1972).
 In this case, moreover, it was not merely respondent's presence in an area of heavy narcotics trafficking that aroused the officers' suspicion but his unprovoked flight upon noticing the police. Our cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. United States v. Brignoni-Ponce 422 U.S. 873, 885, 45 L.Ed.2d 607, 95 S.Ct. 2574 (1975); Florida v. Rodriguez, 469 U.S. 1, 6, 83 L.Ed.2d 165, 105 S.Ct. 308 (1984) (per curiam); United States v. Sokolow, supra, at 8-9. Headlong flight — wherever it occurs — is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such. In reviewing the propriety of an officer's conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists. Thus, the determination of reasonable suspicion must be based on common sense judgments and inferences about human behavior. See United States v. Cortez, 449 U.S. 411, 418, 66 L.Ed.2d 621, 101 S.Ct. 690 (1981). We conclude Officer Nolan was justified in suspecting that Wardlow was involved in criminal activity, and, therefore, in investigating further.
 Such a holding is entirely consistent with our decision in Florida v. Royer, 460 U.S. 491, 75 L.Ed.2d 229, 103 S.Ct. 1319 (1983), where we held that when an officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business.
 Id., at 498. And any refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure. Florida v. Bostick, 501 U.S. 429, 437, 115 L.Ed.2d 389, 111 S.Ct. 2382 (1991). But unprovoked flight is simply not a mere refusal to cooperate. Flight, by its very nature, is not going about one's business ; in fact, it is just the opposite.
 Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning.
Id. at 676.
The actions of police officers in asking a person to sit in the police car do not automatically transform an investigative detention into a formal arrest. State v. Broomfield (Sept. 13, 1996), Clark App. No. 95-CA-0103, unreported, citing State v. McFarland (1982), 4 Ohio App.3d 158. It has also been held that far more intrusive conduct by police officers, such as handcuffing in the course of an investigative detention, does not necessarily make that detention an arrest as long as the handcuffing is reasonable under the circumstances. State v. Mays (1995),104 Ohio App.3d 241, 248-249; Broomfield, supra; United States v. Miller (C.A.8, 1992), 974 F.2d 953, 956-957; United States v. Glenna (C.A.7, 1989), 878 F.2d 967; United States v. Crittendon (C.A.4, 1989), 883 F.2d 326; United States v. Laing (C.A.D.C. 1989), 889 F.2d 281. In fact, even a police officer's display of his weapon during an investigatory stop does not convert the stop into an arrest. United States v. Prior (C.A.6, 1991), F.2d 941 427, 430; United States v. Lane (C.A.6, 1990), 909 F.2d 895. Whether handcuffing or other means of detention are reasonable depends on whether the restraint was temporary and lasted no longer than was necessary to effectuate the purpose of the stop, and whether the methods employed were the least intrusive means reasonably available to verify the officers' suspicions in a short period of time. Glenna, supra, at 972. Handcuffing and other means of detention may also be used to prevent flight. Laing, supra; Crittendon, supra.
The administering of Miranda warnings during the course of an investigative detention also does not make such detention an arrest. In Broomfield, supra, the court held that the actions of the police in asking the defendant to sit in his police cruiser and administering Miranda warnings did not constitute an arrest. The court stated:
 The rule of Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, requires officers to administer the prescribed warnings to persons in custodial arrest before interrogating them. However, the fact that the warnings are given does not necessarily demonstrate that a custodial arrest has occurred.
The manner in which defendant was detained did not exceed the bounds of a lawful investigative detention. A police officer may lawfully detain a person for a reasonable temporary investigatory purpose if the officer's reasonable suspicion of criminal activity based on specific articulable facts outweighs the resulting intrusion on the person's liberty and privacy. State v. McFarland (1982), 4 Ohio App.3d 158, paragraph one of the syllabus.
 Although this defendant's detention was significantly restrictive and was more than momentary, we find that it was reasonable and lawful under the strongly suggestive circumstances that gave rise to the detaining officer's suspicion of criminal activity. The exigencies of reasonable investigatory efforts sufficiently justified the limitations on defendant's freedom for a reasonable investigatory purpose that was not unduly prolonged.
Id. at 161.
During the course of Det. Lake's investigation, it would have been unreasonable for him to allow defendant complete freedom of movement. She had already demonstrated that she had no qualms about running from the police and swallowing evidence. Had Det. Lake failed to handcuff and place her in the police car, it is entirely possible that she would have made another attempt to flee or possibly swallow more evidence. Ingesting narcotics can lead to severe injury or even death. The manner in which defendant was detained was reasonable under these circumstances and necessary for her own safety and for the safety of the officers.
The record reflects that Det. Lake received a tip from a reliable informant that a heavy set, black female with a light mustache and wearing a white t-shirt, was making drug transactions in a high drug activity area. When Det. Lake and his partner arrived at the location in their unmarked police vehicle, he observed the defendant, who matched the informant's description, huddled with another female in what appeared to be a drug transaction. The huddle abruptly ended when someone yelled vice. At this point, the detectives possessed, at a minimum, the requisite reasonable cause to perform an investigatory stop to investigate further the circumstances that aroused their suspicion.
As Det. Lake attempted to continue the investigation by exiting his unmarked police car, defendant fled. Det. Lake yelled police and chased her. During this pursuit, Det. Lake observed defendant place her left hand up underneath her shirt and attempt to conceal something in her mouth which he believed to be an illegal substance.
Based upon Det. Lake's prior experience and the totality of the circumstances, we find that he possessed reasonable suspicion based on specific articulable facts that defendant was committing or had committed a drug offense. The defendant's suspicious actions gave rise to a reasonable inference that defendant did, in fact, possess drugs which she attempted to conceal in her mouth. Under these circumstances, we find that Det. Lake possessed adequate constitutional grounds to effectuate a lawful investigatory detention of defendant.
Assignment of Error I is overruled.
 II. THE COURT ERRED WHEN SHE FAILED TO COMPLY WITH THE REQUIREMENTS OF RULE 12(E), RULES OF CRIMINAL PROCEDURE.
 III. GIVEN THAT THE REQUIREMENTS OF RULE 12(E) ARE MANDATORY, THE TRIAL COURT ERRED AND THE DEFENDANT WAS DENIED DUE PROCESS WHEN THE COURT DELEGATED HER RESPONSIBILITY FOR MAKING THE REQUIRED FINDINGS TO THE PROSECUTOR AND THEN ADOPTED THOSE IN TOTO AS HER OWN.
These assignments of error both involve whether or not the trial court substantially complied with Crim.R. 12(E) and therefore will be discussed together. Defendant contends that requirements of Crim.R. 12(E) were not satisfied because (1) the trial court allegedly failed to set forth its essential findings on the record with respect to the denial of the motion to suppress, and (2) the trial court erroneously adopted the findings of fact and conclusions of law as submitted by the State.
However, we find the record demonstrates that the trial court complied with the dictates of Crim.R. 12(E) which states:
 A motion made before trial other than a motion for change of venue, shall be timely determined before trial. Where factual issues are involved in determining a motion, the court shall state its essential findings on the record.
Defendant argues that the trial court did not sufficiently state on the record its findings in denying the motion to suppress as required by the rule. However, the court stated on the record:
 The Court has received post findings of fact and conclusions of law from both the defense and State, and the Court adopts the findings of fact and conclusions of law as submitted by the State of Ohio.
Even though the language of the rule indicates that findings of fact are mandatory when the resolution of factual issues is necessary to determine the motion to suppress, such findings are not necessary when the record is sufficient for the reviewing court to independently determine whether the motion should have been granted. See State v. Waddy (1992),63 Ohio St.3d 424, 443; State v. Brewer (1990),48 Ohio St.3d 50. In Waddy, the Ohio Supreme Court held that where the trial court record is sufficient to allow full review of the suppression issues, the trial court is not required to issue findings of fact and conclusions of law pursuant to Crim.R. 12(E) on the denial of a motion to suppress evidence.
In the instant case, both parties submitted proposed findings of fact and conclusions of law to the trial court. The trial court subsequently stated on the record that it was adopting the State's findings. Defendant asserts that the State's findings lacked evidentiary support and that the trial court erred in adopting them.
The record reflects that the trial court sufficiently expressed on the record its adoption of the findings and conclusions submitted by the State. Nothing prohibits a trial court from requesting proposed findings of fact and conclusions of law from both parties and subsequently adopting one as its own. See State v. Staton (Mar. 15, 1991), Greene App. No. 90-CA-62, unreported. However, even if the trial court had not stated such on the record, we find that the suppression hearing transcript was more than sufficient for this Court to fully review the suppression issues and therefore, under Waddy, supra, the trial court was not required to issue findings pursuant to Crim.R. 12(E). See State v. Allen (Oct. 9, 1997), Cuyahoga App. No. 71852, unreported.
Furthermore, regardless of any alleged errors in the State's findings of fact adopted by the trial court, we find that the record established that Det. Lake observed defendant in a high drug area in what appeared to be a drug transaction with another woman. The huddle abruptly ended when the officers approached and defendant fled when questioned by Det. Lake. During his pursuit of defendant, Det. Lake observed her attempt to conceal something in her mouth which he believed to be drugs. We find that even if the findings of the trial court contained errors, the above facts standing alone were sufficient to support the trial court's denial of defendant's motion to suppress.
Assignments of Error II and III are overruled.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
KARPINSKI, P.J., CONCURS. ANNE L. KILBANE, J., DISSENTS. (SEE DISSENTING OPINION ATTACHED)
 ___________________________ JAMES M. PORTER, JUDGE