**UNITED STATES of America,**

v.

**Jamar R. CLEMONS and Thomas M. Goodman, Defendants.**

**No. CR. 02–0052(PLF).**

United States District Court, District of Columbia.

May 14, 2002.

Charles Joseph Harkins, Jr., Thomas Clyde Taylor, U.S. Attorney's Office, Washington, DC, for Plaintiff.

Joseph Roll Conte, Bond, Conte & Norman, Gregory Lawrence Poe, Federal Public Defender for D.C., Washington, DC, for Defendants.

### MEMORANDUM OPINION AND ORDER

PAUL L. FRIEDMAN, District Judge.

On May 3, 2002, this matter came before the Court for a hearing on a number of motions filed by the defendants in this case. With respect to defendants' motions to suppress statements, the Court heard the testimony of Officer John J. McDonald of the Metropolitan Police Department. Upon consideration of the arguments of counsel and the testimony of the officer, and for the reasons stated in open court, the Court denied defendant Clemons' motion to suppress statements. It held defendant Goodman's motion to suppress statements in abeyance to permit counsel for the government and counsel for Goodman to file supplemental memoranda and additional authority. Having now considered the testimony and arguments of counsel, as well as the supplemental memoranda, the Court grants defendant Goodman's motion to suppress.

### I. THE FACTS

Officer McDonald testified at the hearing that he and other officers were check-

ing abandoned apartments in a public housing project at about 4:00 a.m. on January 10, 2002, for possible unlawful entries when they heard what sounded like an automobile accident. Officer McDonald, dressed in full police uniform, got into his marked police cruiser and drove towards the sound. When he arrived at the corner of Southern Avenue and D Street, S.E., he saw a black Monte Carlo with two flat tires driving in his direction. He made a U-turn, turned on his flashers and pulled up behind the vehicle which then stopped, presumably because the driver saw the police cruiser behind him. He observed two men in the vehicle; defendant Goodman was in the driver's seat and defendant Clemons was in the front passenger seat. Officer McDonald testified that he saw defendant Clemons bend forward and appear to hide something under his seat and that he then saw defendant Goodman lean forward and across the center console, also appearing to hide something under the front passenger's seat. The passenger door opened and defendant Clemons exited the vehicle. Officer McDonald directed Clemons to get back into the car, but Clemons began to run. As the other officers arrived, Clemons was subdued by Officer McDonald.

The officers ordered defendant Goodman to remain in the vehicle during all of this activity, and he complied. Subsequently, the officers forcibly removed Goodman from the vehicle, and Officer Francis handcuffed him and directed him to sit on the ground next to the car. Upon searching the vehicle, the officers found two handguns under the passenger's seat and one loose round of ammunition. After the weapons were discovered, Officer Francis asked defendant Goodman: "Whose car is this?" Goodman replied that defendant Clemons "came and picked me up. We were going to the Legends nightclub." Officer Francis asked Good-

man whether he had been smoking anything. Defendant Goodman attempted to answer the question but his statements were incoherent. Officer Francis told defendant Goodman that the car was stolen. Defendant Goodman responded: "I didn't steal it. He [Clemons] had it when he picked me up." Officer Francis asked Goodman where the guns came from and Goodman responded: "They were already in the car when he [Clemons] picked me up." Officer Francis asked Goodman whose guns they were. Defendant Goodman replied: "His [Clemons]." Defendant Goodman then went on to say that Clemons was "hitting on him" and made him drive.

Officer McDonald further testified that neither Officer Francis nor any other police officer gave defendant Goodman *Miranda* warnings before this questioning took place. In addition, McDonald testified that during the course of the colloquy between Officer Francis and defendant Goodman, Goodman gave a false name and other false booking information.

Counsel for defendant Goodman argues that all the statements made by Goodman to Officer Francis must be suppressed under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). He argues that he was in custody because he was handcuffed and forced to sit on the ground next to the car and that his statements were made in direct or indirect response to the officer's questions. The government responds that the statements should not be suppressed because (1) the police officer asked generic questions necessary to determine the facts of the situation, which is permissible under *Allen v. United States*, 390 F.2d 476 (D.C.Cir.1968), and (2) this was a permissible investigatory stop under *Terry v. Ohio*, 392 U.S. 1, 88

S.Ct. 1868, 20 L.Ed.2d 889 (1968), not an arrest. With respect to this second argument, the government relies on *United States v. Laing*, 889 F.2d 281, 285–86 (D.C.Cir.1989), for the proposition that even though the officer placed Mr. Goodman on the ground and handcuffed him, the officer's conduct was reasonable under *Terry*, and *Miranda* therefore is not implicated.

## II. ANALYSIS

■ Even if the stop and detention were permissible under *Terry*, the Court cannot agree with the government that *Miranda* is not implicated merely because there was no formal arrest. It simply is not accurate to say that because a person has been "reasonably detained" on less than probable cause for good and sufficient reason under *Terry*, it necessarily follows that there is no "custodial interrogation" triggering the procedural safeguards and the warnings mandated by *Miranda*. A suspect can be in police custody for purposes of *Miranda* before he has been arrested in the Fourth Amendment sense. *See Berkemer v. McCarty*, 468 U.S. 420, 441–42, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); *United States v. Perdue*, 8 F.3d 1455, 1463–66 (10th Cir.1993); *United States v. Smith*, 3 F.3d 1088, 1097 (7th Cir.1993).

■ The traditional post-*Terry* view was that *Miranda* warnings are not implicated in a valid *Terry* stop because

the typical police-citizen encounter envisioned by the Court in *Terry* usually involves no more than a very brief detention without the aid of weapons or handcuffs, a few questions relating to identity and the suspicious circumstances, and an atmosphere that is "substantially less police-dominated than that surrounding the kinds of interrogation at issue in *Miranda*." ·

*United States v. Perdue*, 8 F.3d at 1464 (quoting *Berkemer v. McCarty*, 468 U.S. at 439, 104 S.Ct. 3138). But today police officers confront situations more fraught with danger than in the past, including circumstances that sometimes justify—even under the rationale of *Terry*—the use of handcuffs, the placing of suspects in police cruisers, the drawing of weapons and other measures of force more traditionally associated with the concept of "custody" than with "brief investigatory detention." *United States v. Perdue*, 8 F.3d at 1464. In such contexts, detention without probable cause may still be permissible for Fourth Amendment purposes, while at the same time creating a "custodial situation" under *Miranda* because a reasonable person so detained would feel that he has been deprived of his "freedom of action in [a] significant way," or that he was "completely at the mercy of the police." *Berkemer v. McCarty*, 468 U.S. at 435, 438, 104 S.Ct. 3138. This Court holds that in such cases, suspects must be advised of their constitutional rights before they are interrogated. *See, e.g., United States v. Perdue*, 8 F.3d at 1464–65 (*Miranda* warnings required during *Terry* stop when police questioned suspect after drawing their weapons, forcing suspect out of car, directing him to lie face down on the ground, and placing handcuffs on him); *United States v. Smith*, 3 F.3d at 1097–98 (*Miranda* warnings required during *Terry* stop that became "custodial" because defendant was surrounded by police officers and was handcuffed and then questioned); *United States v. Elias*, 832 F.2d 24, 26 (3d Cir.1987) (*Miranda* warnings required during *Terry* stop if suspect is in custody for practical purposes or the questioning takes place in a police dominated or coercive atmosphere).

■ On the basis of the testimony of Officer McDonald, the Court finds that

defendant Goodman was in custody for purposes of the Fifth Amendment after he was removed from the vehicle by Officer Francis, put on the ground and handcuffed. Clearly he had been deprived of his freedom of action in a significant way, and any reasonable person would have understood that he was in custody and not free to leave. The officer's testimony also makes clear that defendant Goodman was interrogated while he was in custody and that all, or nearly all, of the statements he made were in response to direct questions put to him by Officer Francis. Finally, Officer McDonald acknowledged that the defendant was not advised of his rights under *Miranda*. Since the interrogation took place in a custodial setting in the absence of *Miranda* warnings, all statements made by defendant Goodman must be suppressed.[1]

The two cases relied upon by the government, *Allen v. United States*, 390 F.2d at 479, and *United States v. Laing*, 889 F.2d at 285–86, are not relevant. Under *Allen v. United States*, 390 F.2d at 479, the police may ask generic preliminary questions to ascertain the facts of a situation without violating *Miranda*. In this case, the officers questioned Goodman after removing him from the car, placing him in handcuffs, and forcing him to the ground, and after the officers discovered the two firearms under the front passenger seat of the car. The questions posed to Goodman went beyond the kind permitted by *Allen* and were intended to elicit incriminatory responses about the weapons just seized from the vicinity of a suspect in custody. The issue in *Laing* was whether the stop and subsequent search were proper under *Terry*. In *Laing*, there was no issue regarding suppression of a statement—in

fact there was no statement—and no interrogation; hence there was no question about whether the defendant was in "custody" when he was interrogated. As the Court already has concluded, even if the stop and search in this case were proper under *Terry*, there was custodial interrogation without the proper *Miranda* warnings.

For the foregoing reasons, defendant Goodman's motion to suppress statements is GRANTED.

SO ORDERED.

---

1. The Court will reserve for trial the question of whether the statements were nevertheless made voluntarily and therefore may be introduced for impeachment purposes under *Har-*

*ris v. New York*, 401 U.S. 222, 224–26, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), in the event the defendant chooses to testify in his own behalf.